# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GORDON TANNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-0021 |
| | ) | Judge Sharp |
| AMERICAN BONDHOLDER | ) | |
| FOUNDATION, LLC and JONNA Z. | ) | |
| BIANCO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants' fully briefed Motion to Stay Proceedings Pending Arbitration (Docket No. 19). That Motion will be denied.

## I. BACKGROUND

According to the record, the relevant factual allegations are these:

From 1900 to 1940, the Chinese government issued millions of dollars in sovereign debt in the form of government bonds. Money from the bonds was used to fund the modernization of China's infrastructure. In 1938, China defaulted on the bonds.

The defaulted bonds are believed to have a total current value exceeding $89 billion. Defendant American Bondholder Foundation LLC ("ABF") (who Defendant Jonna Bianco is alleged to operate as an alter ego for her own benefit) is said to represent holders of the bonds and allegedly is seeking to hold China accountable for the bonds. Towards that end, ABF "sells" Chinese Bonds to clients who are then asked to sign an irrevocable power of attorney in favor of ABF to negotiate and recover on the bonds. In the typical "Agreement and Grant of Power of Attorney," the

1

bondholder "hires ABF to provide organizational, advocacy, public relations and negotiating services to the Bondholder in connection with the claim of the Bondholder for payments of all amounts due to the Bondholder as the holder of the defaulted Chinese government bonds," and ABF agrees to "act as the Bondholder's representative in seeking payment for the Bondholder of all amounts due under the bonds." (Docket No. 19-1 at 10). The typical agreement also authorizes ABF to designate a third-party escrow agent to hold the original bonds until termination of the agreement.

Plaintiff clams to be the owner of 469 Chinese Bonds in the possession and control of ABF. Eleven of these bonds were sold to him by ABF, and the remaining 458 were transferred to him by third parties.[1]

According to Plaintiff, ABF has yet to secure any recovery on the bonds, and most likely never will. He claims to have repeatedly requested that the bonds be turned over to him, but those requests have been ignored. By way of this lawsuit, he seeks a declaratory judgment that he is entitled to possession of the 469 bonds he claims to own, as well as damages for unjust enrichment.[2]

## II. DISCUSSION

Defendants move for arbitration and a stay based upon the Agreements and Grants of Power of Attorney which Plaintiff signed in regard to his purchase of the 11 bonds directly from ABF, and based upon the similar (if not identical) Agreements signed by other bondholders which indicated

---

[1] Plaintiff contends that the bonds which were transferred to him were done so in documented transactions recognized by ABF. Defendants concede that the 11 bonds sold directly to Plaintiff are owned by him, but the ownership of the other bonds is in dispute, either because there are competing claims to the bonds, or the bonds were not transferred in accordance with the Agreement between the transferring bondholder and ABF.

[2] According to Plaintiff, the amount he paid for the bonds varied, but he purchased one bond from ABF for $15,000. He asserts the amount of damages will vary significantly depending upon whether or not he is given possession of the bonds.

2

that the bonds could not be transferred unless the transferee first acknowledged the existence of the Agreements and agreed to be bound by them. The Agreements and Powers of Attorney contain the following arbitration clause:

> **Arbitration.** In the event of any dispute arising hereunder, the parties agree to first attempt in good faith to resolve such dispute within 60 days upon notice to the other party. In the event the parties are unable to resolve their dispute, all parties agree to submit all disputes to arbitration, which determination shall be binding on the parties. Any arbitration proceeding shall be held in Nashville, Tennessee and be conducted in accordance with the rules of the American Arbitration Association.

(Docket No. 19-1 at 6).

Plaintiff argues against compelling arbitration in this case for several reasons. First, he asserts that the Agreements and Powers of Attorney that he signed, while characterized as "irrevocable," are not because they are not coupled with an interest. Second, he argues that the Agreements are unenforceable because they are contracts of adhesion. Third, he contends Defendants have waived their right to arbitration because, despite his entreaties, they did not try to resolve this dispute within sixty days. Finally, he argues that, if the arbitration clauses are deemed to be valid, the requirement for arbitrationn should only apply to the 11 bonds covered by the Agreements he signed, and not to the other 458 bonds that he received from others.

Having fully considered those arguments, as well as those raised by Defendants in opposition, the Court agrees with Plaintiff's first argument and finds that the Agreements and Powers of Attorney signed by him, though said to be irrevocable, are, in fact, revocable and, as such, Plaintiff is not bound by the arbitration agreement therein. With that conclusion, the Court need not address Plaintiff's remaining arguments.

3

The Federal Arbitration Act[3] provides in relevant part that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

"There is a general presumption in favor of arbitration," Day v. Fortune Hi-Tech Marketing, Inc., 2013 WL 4859781 at *3 (6th Cir. Sept. 12, 2013), and a court is required to "resolv[e] any doubts as to the parties' intentions in favor of arbitration." Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010). This is in keeping with "the central purpose of the Federal Arbitration Act to ensure 'that private agreements to arbitrate are enforced according to their terms.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-4 (1995) (quoting, Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

Nevertheless, "[a] party may avoid arbitration in either of two ways: 1) by showing the dispute at hand is beyond the scope of the arbitration agreement, or 2) by showing the agreement itself is invalid or unenforceable." Howard v. Rent-A-Center, Inc., 2010 WL 3009515 at *2 (E.D.

---

[3] In support of their respective positions, the parties rely on the Federal Arbitration Act. However, the agreements at issue are not clear as to whether the Federal Arbitration Act or the Tennessee Uniform Arbitration Act should apply because, while generally stating that arbitration will be conducted in accordance with the rules of the American Arbitration Association, the Agreements also indicate that they shall "be governed by and shall be construed in accordance with the laws of the State of Tennessee." (Docket No. 19-1 at 15). Given the apparent agreement of the parties and the fact that "[a]mbiguities are to be resolved in favor of the federal standard," Muskegon Cent'l Dispatch v. Tiburon, Inc., 462 Fed. Appx. 517, 523 (6th Cir. 2012), the Court looks to the Federal Arbitration Act in determining the issue of arbitrability. See, Webb v. First Tennessee Brokerage, Inc., 2013 WL 3941782 at *15 (Tenn. Ct. App. June 18, 2013) ("The FAA applies to all state and federal cases in which the contract at issue requiring arbitration involves or affects interstate commerce").

4

Tenn. July 28, 2010) (citing, Great Earth Co. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002)). Thus, "[e]ven if courts are meant to favor a finding that parties have agreed to submit their claims to arbitration, parties must still have a valid and enforceable agreement to resolve their claims in arbitration." Day, 2013 WL 4859781 at *3.

"Because arbitration agreements are fundamentally contracts, [a court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." Herbender v. Bickford Sen. Living Corp., 656 F.3d 411, 416 (6th Cir. 2011) (citation omitted). Here, the parties' relationship is governed by the Agreements and Powers of Attorney and, under Tennessee law, "[t]he execution of a power of attorney creates a principal-agent relationship . . . that evidences to third parties the purpose of the agency and the extent of the agent's power." Tennessee Farmers Life Reassurance Co. v. Rose, 239 S.W.3d 743, 750 (Tenn. 2007).

According to Plaintiff, he has repeatedly attempted to revoke the Agreements by requesting that he be given the bonds, but those requests have been fruitless. As noted, Plaintiff argues that the Agreements he executed are revocable because they are not coupled with an interest in his bonds. In response, Defendants point out that each of the Agreements provides that they are irrevocable and, in any event, each is coupled with an interest.

"'It is well settled that 'powers of attorney are to be construed in accordance with the rules for interpretation of written instruments generally; in accordance with the principles governing the law of agency, and, in the absence of proof to the contrary, in accordance with the prevalent laws relating to the act authorized." Davis v. Kindred Healthcare Operating, Inc., 2011 WL 1467212 at *2 (Tenn. Ct. App. April 19, 2011) (citation omitted). As with contracts generally, "powers of attorney should be intrepreted according to their plain terms." Id. at *3.

5

The Agreements at issue do in fact provide that "[t]he power of attorney granted hereby is a special power of attorney coupled with an interest [and] is irrevocable." (Docket No. 19-1 at 11). However, this may well be illusory because Plaintiff has "no right to terminate . . . except upon a material and continuing breach" by ABF (unless "materially cured") (Docket No. 19-1 at 14), but establishing a material breach is next to impossible because ABF controls the bonds and all relevant information.

A contract is illusory if it "'essentially promis[es] nothing at all, or allow[s] the promisor to decide whether or not to perform the promised act'" Cumberland Prop. LLC. v. Revenwood Club, Inc., 2011 WL 1303375 at *9 (Tenn. Ct. App. April 5, 2011) (quoting, Walker v. Ryan's Family Steak Houses, Inc., 289 F.Supp.2d 916, 929 (M.D. Tenn. 2003)). That is "[a] promise is illusory when it fails to bind the promisor, who retains the option of not performing; an illusory promise is not consideration for a return promise, and so cannot be the basis for finding a contract." German v. Ford, 300 S.W.3d 692, 705 (Tenn. Ct. App. 2009).

True, "[e]very contract imposes upon the parties a duty of good faith and fair dealing in the performance and interpretation of the contract," Elliot v. Elliot, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004), and courts "often imply this covenant in order to prevent a promise from being deemed illusory." Rode Oil Co., Inc. v. Lamar Advertising Co., 2008 WL 4367300 at *10 (Tenn. Ct. App. Sept. 18, 2008). However, even with the assumption that Defendants acted at all times in good faith, the fact that the Agreements on their face say they are irrevocable does not necessarily make them so because Tennessee courts have long held that "'[a] power of attorney, although in terms irrevocable, may nevertheless be revoked subject to damages for the breach of any contract therein.'" Clay v. People's Finan. & Thrift, Co., 25 S.W.2d 578, 579 (Tenn. 1930). This is an

6

opinion shared by other courts and commentators as well. See, Hunter v. Mut. Reserve Life Ins. Co., 218 U.S. 573, 590 (1910) (citation omitted) ("It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time, whether it is in terms irrevocable"); Snyder v. Westover, 217 F.2d 928, 935 (9th Cir. 1954) ("the power of attorney given by plaintiff . . . was not coupled with an interest and hence was revocable . .. [and] this would be true even if the instrument stated in terms it was irrevocable"); FAR TB LLC v. TB Isle Resort, L.P., 865 F. Supp. 2d 1172, 1195 (S.D. Fl. 2011) ("'the general rule is that the principal has the power to revoke the agency even if that revocation is wrong, even if it breaches the applicable contract and even if the revocation creates clear-cut liability for damages"); Estate of Norman A. Heylin v. Capital Mgmt Group, 2011 WL 1522857 (E.D. Pa. Oct. 13, 2000) ("New Jersey follows the general rule that a power of attorney may be revoked at the will of the principal unless it is coupled with an interest" because "[a] basic concept in the law of agency is the right of a principal to select his own alter ego"); RESTATEMENT (SECOND) OF AGENCY § 118 cmt. b ("The principal has power to revoke and the agent has power to renounce, although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable"); 2 CJS AGENCY § 99 ("The power to revoke an agent's authority at any time is not affected by the fact that there is an express or implied contract between the agent and the principal that such agency is irrevocable").

  While language purporting to make a power of attorney might not necessarily make it so, a power of attorney that is coupled with an interest may, in fact, be deemed irrevocable. "It is not always simple to discern whether a power of attorney is "'coupled with an interest.'" In re St. Felix, 436 B.R. 786, 790 (Bktrcy. E.D. Pa. 2010), but it has been stated that "[a]n indispensable feature of a power given as security is that the agent have a proprietary interest in the *res* or subject matter of

7

the agency independent of the agency relationship itself . . . :

> In order that a power may be irrevocable because it is coupled with an interest, it is necessary that the interest be in the subject matter of the power and not in the proceeds which will arise from the exercise of the power. . .
>
> . . . [T]he person clothed with the authority must derive a present or future interest in the subject itself on which the power is to be exercised. . . . In short, the test is:
>
> Does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred?
>
> If the former, it is an agency coupled with an interest ... if the latter, it is not.

Govt. Guar. Fund of Republic of Finland v. Hyatt Corp., 95 F.3d 291, 301 (3rd Cir. 1996) (quoting 2 Samuel Williston, A TREATISE ON THE LAW OF CONTRACTS § 280, at 300–02 (3d ed. 1959)). In other words, "[i]n order to fall within th[e] 'agency-is-irrevocable' exception, . . . the interest must be 'in the subject of the agency itself, and not a mere interest in the execution of the authority'" because "the reason for the exception is that when an agent has its own interest in the subject matter of the agency, the agent's work is, in part, to protect it *own* interest in the property it is managing – which means the agency is not only for the benefit of the principal but also the agent.'" FAR TB, 865 F. Supp. 2d at 1196 (citation omitted).

Here, the subject of the agency as between Plaintiff and Defendants is Chinese bonds, and specifically the 11 Chinese bonds encompassed in the Agreements that Plaintiff signed. Defendants do not claim to hold an ownership interest in those bonds, but instead argue that "Defendant Bianco, as a bondholder, has an interest in the subject matter of the agency." (Docket No. 28-1 at 3). That, of course, says nothing about ABF's interest, but, regardless, the agreement specifies that Defendants were hired to "provide organizational, advocacy, public relations and negoitation

services to Bondholder in connection with the claim of Bondholder for payments . . . due Bondholder." (Docket No. 19-1 at 3). These are the specified "services" to which Defendants agreed, for which they were to receive a percentage off the top. Defendants do not "derive a present or future interest in the subject itself on which the power is to be exercised," but rather have an interest in "the proceeds which will arise from the exercise of the power." Govt. Guar. Fund, 95 F.3d at 301. As such, the Court finds that the Power of Attorney and Agreements are revocable, and the arbitration clause contained therein are, therefore, null and void in light of Plaintiff's repeated attempts to secure possession of the bonds.

In reaching this conclusion, the Court recognizes Defendants' reliance upon Clay which states that "[w]here a letter of attorney forms a part of a contract, and is a security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, is deemed irrevocable in law," and their argument that they provided a service in relation to negotiating the Chinese bonds. 25 S.W.2d at 579. But the "performance of any act" language from Clay does not appear to have been picked up by any subsequent Tennessee cases, and Clay must be read in context.

Clay involved a power of attorney in a loan contract under which the debtor gave the lender an irrevocable power of attorney to seek a judgment of confession against the debtor should the debtor fail to pay under the contract's terms. See, Hermitage Loan Co. v. Daykin, 56 S.W.2d 164, 165 (Tenn. 1933) (Clay holds that "[a] power of attorney to confess judgment upon default, contained in a promissory note, is deemed irrevocable in law"). This is the prototypical agency coupled with an interest. See, In re St. Felix, 436 B.R. at 790 ("Perhaps the clearest example of coupling a power of attorney with an interest arises when the principal and agent are also in a

9

debtor-creditor relationship. Thus, if the principal/debtor grants powers to the agent/creditor for the agent to use as a means of securing performance of the principal's duties, the power has been coupled with an interest."). The Agreements between Plaintiff and Defendants are not.

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Stay Proceeding Pending Arbitration will be denied. An appropriate Order will be entered.

_Kevin H. Sharp_
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

10